In the Interest of J.L., L.R., and S.G., Minor Children,

J.L., L.R., and S.G., Minor Children, Appellants.

No. 09–0945.

Court of Appeals of Iowa.

Nov. 25, 2009.

Amanda Van Wyhe of Vriezelaar, Tigges, Edgington, Bottaro, Boden, & Ross, L.L.P., Sioux City, guardian ad litem and attorney for minor children.

Timothy Scherle of Scherle Law Firm, Sioux City, for appellee father of J.L.

Brian Buckmeier of Buckmeier & Daane Law Firm, Sioux City, for appellee father of S.G.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Patrick Jennings, County Attorney, and Dewey Sloan, Assistant County Attorney, for appellee State.

Rosyland Koob of Heidman Law Firm, Sioux City, for intervenor Winnebago Tribe of Nebraska.

Considered by VOGEL, P.J., and VAITHESWARAN and POTTERFIELD, JJ.

VOGEL, P.J.

J.L., L.R., and S.G. appeal from the district court's ruling that they, through their attorney/guardian ad litem, could not object to the transfer of jurisdiction to a tribal court pursuant to Iowa Code section 232B.5 (2009). Because we find section 232B.5 violates the children's due process rights under the United States and Iowa Constitutions, we reverse and remand for further proceedings.

## I. Background Facts and Proceedings.

Since 2003, when S.G. tested positive for methamphetamine at birth, the children's family has been involved with the Iowa Department of Human Services. Subsequently, S.G. (born 2003), L.R. (born 2006), and J.L. (born 2008) were adjudicated to be children in need of assistance (CINA). On December 29, 2008, a petition seeking the termination of parental rights was filed for all three children.

The Winnebago Tribe of Nebraska (Tribe) intervened.[1] In March 2009, the Tribe filed motions to transfer jurisdiction. Subsequently, the children's attorney/guardian ad litem[2] filed a resistance to the Tribe's motion to transfer that (1) objected to the motion to transfer asserting that a transfer of jurisdiction was not in the best interests of the children, and (2) argued that if the court determined the children could not object or the children could not object based upon their best interests, the Iowa Indian Child Welfare Act was unconstitutional because it violated the children's rights to due process and equal protection guaranteed under the United States and Iowa constitutions. On May 27, 2009, the district court issued its ruling. It found that pursuant to Iowa Code section 232B.5(10), the children's attorney/guardian ad litem could not object to the transfer.[3] Therefore, the district

---

1. The Tribe was granted intervention on behalf of S.G. in November 2008 and on behalf of L.R. and J.L. in April 2009.

2. Iowa Code section 232.89 requires that following the filing of a CINA petition, an attorney and guardian ad litem be appointed for the child. *See also* Iowa Code § 232.2(22) (defining a guardian ad litem as "a person appointed by the court to represent the interest of a child in any judicial proceedings to which the child is a party"); *In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986) (stating due process requires that counsel appointed pursuant to a statute provide effective assistance). The same person may serve as both the child's attorney and guardian ad litem, unless a conflict arises between the two roles. Iowa

Code § 232.89(4); *see also In re T.P.*, 757 N.W.2d 267, 274 (Iowa Ct.App.2008); *In re A.T.*, 744 N.W.2d 657, 665 (Iowa Ct.App. 2007). Additionally, both the Federal and Iowa Indian Child Welfare Act provide for the appointment of an attorney for an Indian child. *See* 25 U.S.C. § 1912(b) ("The court may, in its discretion, appoint counsel for the child upon a finding that such appointment is in the best interest of the child."); Iowa Code § 232B.5(16) ("The child shall also have the right to court-appointed counsel in any removal, placement, termination of parental rights, or other permanency proceedings.").

3. The State through the county attorney also filed a resistance to the Tribe's motion to transfer. *See In re A.W.*, 741 N.W.2d 793, 803

court did not consider the merits of the children's objection and ordered the proceedings concerning the children be transferred to the Tribe. Furthermore, the district court did not address the children's arguments that the Iowa Indian Child Welfare Act was unconstitutional. The children filed a motion to amend or enlarge pursuant to Iowa Rule of Civil Procedure 1.904(2), in part requesting the district court rule on their constitutional arguments. On June 16, 2009,[4] the district court ruled on the children's motion but did not address the children's constitutional arguments, stating: "The court, having considered the motion, finds that the previous order of the court is appropriate and will not be expanded to include a finding that portions of the Indian Child Welfare Act are unconstitutional."

The children appeal and assert that they are permitted to object to a motion to transfer pursuant to Iowa Code section 232B.5(10), and if they are not permitted to object, section 232B.5(10) is unconstitutional as it violates their rights to due process and equal protection under the United States and Iowa Constitutions. Furthermore, they claim that if they cannot object to a transfer of jurisdiction based upon their best interests, section 232B.5 violates their rights to due process under the United States and Iowa Constitutions.

## II. Standard of Review.

 Normally, our review of juvenile proceedings is de novo. *In re N.V.*, 744 N.W.2d 634, 636 (Iowa 2008). However, we review a court's ruling on motions to transfer for correction of errors at law.

*Id.* We review issues of statutory construction for errors at law, but review constitutional challenges to a statute de novo. *In re N.N.E.*, 752 N.W.2d 1, 6 (Iowa 2008); *In re A.W.*, 741 N.W.2d 793, 806 (Iowa 2007).

## III. Analysis.

In 1979, Congress passed the Federal Indian Child Welfare Act (ICWA), which established "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes." *N.N.E.*, 752 N.W.2d at 6–7 (citing 25 U.S.C. §§ 1901–1963). States are permitted to expand on the protections established pursuant to ICWA. *Id.; see* 25 U.S.C. § 1921 (directing courts to apply either state or federal law, whichever provides greater protection to an Indian child's parents or an Indian custodian). However, states cannot provide additional rights to tribes at the expense of the parents' or children's rights. *N.N.E.*, 752 N.W.2d at 9. Iowa passed its own ICWA in 2003 with its stated purpose to "clarify state policies and procedures regarding implementation of the [Federal ICWA]." Iowa Code § 232B.2 (2009); *N.N.E.*, 752 N.W.2d at 7. As permitted by the federal legislation, the Iowa ICWA extends additional protections to Indian families and tribes. *N.N.E.*, 752 N.W.2d at 7; *A.W.*, 741 N.W.2d at 798.

 The Federal ICWA creates a dual jurisdictional scheme for child custody proceedings involving an Indian child. 25 U.S.C. § 1911; *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36, 109 S.Ct. 1597, 1602, 104 L.Ed.2d 29, 38 (1989).

(Iowa 2007) ("County attorneys ... bear a statutory duty to represent the interests of the State in the juvenile court.") The district court found that the State could not object to

the motion to transfer and did not consider the State's objection.

4. The ruling was dated June 16, 2009, but was file stamped June 17, 2009.

Section 1911(a) creates exclusive jurisdiction with a tribe over child custody proceedings involving an Indian child residing or domiciled within the reservation. However, the Federal ICWA does not divest state courts of their jurisdiction over an Indian child not residing or not domiciled within the reservation. *In re C.W.*, 239 Neb. 817, 479 N.W.2d 105, 112 (1992) (citing *Kiowa Tribe of Okla. v. Lewis*, 777 F.2d 587, 592 (10th Cir.1985), *cert. denied* 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986)). Rather, section 1911(b) creates concurrent but presumptively tribal jurisdiction over child custody proceedings involving an Indian child not residing or domiciled within the reservation and provides for transfer of jurisdiction from state courts to tribal courts. *See In re T.S.*, 245 Mont. 242, 801 P.2d 77, 82 (1990) (discussing the distinction between a section 1911(a) case and a section 1911(b) case).

One instance where the Iowa ICWA purports to expand on the protections afforded by the Federal ICWA is in proceedings to transfer jurisdiction from state court to tribal court. Under the Federal ICWA, proceedings are transferred upon the petition of the child's parents, Indian custodian, or tribe. 25 U.S.C. § 1911(b). However, the petition shall be denied if either parent objects, the tribal court declines jurisdiction, or upon a finding of good cause. *Id.* "Good cause" is not defined in the statute, but the Bureau of Indian Affairs issued nonbinding guidelines to assist state courts in applying the Federal ICWA. *N.N.E.*, 752 N.W.2d at 7; *see* Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (Nov. 26, 1979) (setting forth a nonexclusive list of five factors that may constitute good cause) [hereinafter Guidelines]. The introduction to the Guidelines states that "the legislative history of the Act states explicitly that the use of the term good cause' was designed to provide state courts with flexibility in determining the disposition of a placement proceeding involving an Indian child." Guidelines, 44 Fed. Reg. at 67,584; *see In re Robert T.*, 200 Cal.App.3d 657, 246 Cal.Rptr. 168, 172 (1988). Under the guidelines, the children subject to the proceeding may object to the transfer of jurisdiction. *See* Guidelines, 44 Fed. Reg. at 67,590 ("If the court believes or *any party* asserts that good cause to the contrary exists, the reasons for such belief or assertion shall be stated in writing and made available to the parties who are petitioning for transfer." (emphasis added)); *see, e.g., In re M.C.*, 504 N.W.2d 598, 601 (S.D.1993) (finding that under the Federal ICWA an Indian child was entitled to an evidentiary hearing to establish good cause not to transfer jurisdiction to a tribal court). Furthermore, in determining whether good cause exists to deny a motion to transfer, the children's best interests may be considered. *See e.g., In re Appeal in Maricopa County Juvenile Action No. JS–8287*, 171 Ariz. 104, 828 P.2d 1245, 1251 (Ariz.Ct.App.1991) ("A trial court properly may consider an Indian child's best interest when deciding whether to transfer a custody proceeding to tribal court."); *Robert T.*, 246 Cal.Rptr. at 175 (stating the best interest of the child is a "pertinent and indeed a necessary consideration in deciding whether to grant or deny a transfer request"); *In re Adoption of T.R.M.*, 525 N.E.2d 298, 308 (Ind.1988) (stating that the best interests of the child is a valid consideration in determining whether to transfer a child custody proceeding to tribal court); *T.S.*, 801 P.2d at 80–81 (same); *In re N.L.*, 754 P.2d 863, 869 (Okla.1988) (same); *In re J.L.*, 654 N.W.2d 786, 792–93 (S.D.2002) (considering the best interests of a child in determining whether to transfer to tribal court); *but see, e.g., In re J.L.P.*, 870 P.2d 1252, 1258 (Colo.1994) (stating that the best in-

terests of the child are not relevant in determining whether to transfer child custody proceedings to tribal court); *In re Armell*, 194 Ill.App.3d 31, 141 Ill.Dec. 14, 550 N.E.2d 1060 (1990) (same); *In re C.E.H.*, 837 S.W.2d 947 (Mo.Ct.App.1992) (same); *In re A.B.*, 663 N.W.2d 625, 633–34 (N.D.2003) (same).

■ However, the Iowa ICWA narrowly defines who may object to a transfer proceeding and good cause. Iowa Code section 232B.5 states:

(10) Unless either of an Indian child's parents objects, in any child custody proceeding involving an Indian child who is not domiciled or residing within the jurisdiction of the Indian child's tribe, the court shall transfer the proceeding to the jurisdiction of the Indian child's tribe, upon the petition of any of the following persons:

 a. Either of the child's parents.

 b. The child's Indian custodian.

 c. The child's tribe.

 . . . .

(13) If a petition to transfer proceedings as described in subsection 10 is filed, the court shall find good cause to deny the petition only if one or more of the following circumstances are shown to exist:

 a. The tribal court of the child's tribe declines the transfer of jurisdiction.

 b. The tribal court does not have subject matter jurisdiction under the laws of the tribe or federal law.

 c. Circumstances exist in which the evidence necessary to decide the case cannot be presented in the tribal court without undue hardship to the parties or the witnesses, and the tribal court is unable to mitigate the hardship by making arrangements to receive and consider the evidence or testimony by use of remote communication, by hearing the evidence or testimony at a location con-

venient to the parties or witnesses, or by use of other means permitted in the tribal court's rules of evidence or discovery.

 d. An objection to the transfer is entered in accordance with subsection 10.

Unlike the Federal ICWA, the Iowa ICWA limits a finding of good cause to deny a transfer to four enumerated circumstances. *See N.V.*, 744 N.W.2d at 637 ("By use of the word 'only,' the legislature made it clear that only those causes listed in section 232B.5(13) constitute good cause to deny the request for a transfer to a tribal court."). The good cause definition only allows for an objection to the transfer by the parents. Iowa Code § 232B.5(10), (13). Additionally, the narrow definition of good cause does not allow for the children's best interests to be considered in determining whether good cause exists to deny a transfer. *N.V.*, 744 N.W.2d at 638.

### A. Statutory Claim.

■ The children argue that the district court erred in finding the children could not object to the transfer proceedings pursuant to Iowa Code section 232B.5(10). The provisions of the Iowa ICWA are to be strictly construed and applied. *In re R.E.K.F.*, 698 N.W.2d 147, 149 (Iowa 2005).

We only resort to the rules of statutory construction when a statute is ambiguous. When a statute's language is plain and its meaning is clear, we look no further. If reasonable persons can disagree on a statute's meaning, it is ambiguous.

*N.V.*, 744 N.W.2d at 637. In this case, the statute's language is plain, clear, and susceptible to only one interpretation.

■ The Iowa ICWA specifically states that "[u]nless either of an Indian child's parents objects . . . the court shall transfer

the proceeding" and does not provide for an objection by any other party to the proceedings, including the children. *See* Iowa Code § 232B.5(10). However, in support of their argument, the children cite to cases interpreting the Federal ICWA finding that a child has standing to object to a motion to transfer. *See, e.g., M.C.,* 504 N.W.2d at 601. The State responds that the Federal ICWA does contemplate objections to transfers, but the Iowa ICWA does not. On this point, we agree with the State. The Federal ICWA allows for all parties to the proceedings to object under a good cause analysis, but the Iowa ICWA narrowly defines good cause.

> [Section 232B.5(13)] lists the circumstances that constitute good cause to allow a court to deny a request to transfer a case. The section specifically states "the court shall find good cause to deny the petition *only* if one or more of the" circumstances contained in the statute are shown to exist. By use of the word "only," the legislature made it clear that only those causes listed in section 232B.5(13) constitute good cause to deny the request for a transfer to a tribal court.

*N.V.,* 744 N.W.2d at 637. The circumstances enumerated in section 232B.5(13) only allow for a finding of good cause pursuant to an objection under section 232B.5(10)—an objection by a parent. *See Callender v. Skiles,* 591 N.W.2d 182 (Iowa 1999) ("Clearly, legislative intent is expressed by omission as well as inclusion."). Thus, under the Iowa ICWA's narrow definition of good cause, an objection is allowed by a parent, but not a child. Consequently, we find that the plain language of the transfer section of the Iowa ICWA does not allow for the court to deny a request to transfer a case to tribal court based upon an objection by the children. However, this finding does not end our analysis as we must next consider the children's constitutional claims.

### B. Constitutional Claims.

 The children argue the Iowa ICWA violates their due process rights under the United States and Iowa Constitutions. *See* U.S. Const. amend. XIV; Iowa Const. art. I, § 9. Both the United States and Iowa Constitutions prohibit the states from depriving any person "life, liberty, or property, without due process of law." U.S. Const. amend. XIV; Iowa Const. art. I, § 9.[5] "The Due Process Clauses are understood to include two separate but related concepts." *State v. Seering,* 701 N.W.2d 655, 662 (Iowa 2005). In this case, both concepts are raised. Substantive due process "prevents the government from interfering with rights implicit in the concept of ordered liberty." *Id.* "Its companion concept, procedural due process, acts as a constraint on government action that infringes upon an individual's liberty interest." *Id.*

 1. The Children's Constitutional Claim regarding their Ability to Lodge an Objection. The children argue that Iowa Code section 232B.5(10) violates their rights to procedural due process because this code section does not allow them to object to a transfer motion or partici-

---

**5.** The due process clauses of the United States and Iowa Constitutions are nearly identical in scope, import, and purpose. *State v. Hernandez–Lopez,* 639 N.W.2d 226, 237 (Iowa 2002). No party asserts that we should utilize a different analysis under the Iowa Constitution. Therefore, our discussion of the children's due-process arguments applies to both their federal and state claims. *See State v. Dudley,* 766 N.W.2d 606, 624 (Iowa 2009) (using the same analysis to interpret the due process clauses of the United States and Iowa Constitutions because neither party suggested the Iowa provision should be interpreted differently than its federal counterpart).

pate in a transfer proceeding. "A person is entitled to procedural due process when state action threatens to deprive the person of a protected liberty or property interest." *Seering*, 701 N.W.2d at 665. "Thus any due process inquiry prompts a two-step process. First, the court must determine if the deprivation implicates a liberty or property interest. If so, the court must then decide what process is due the specific interest at issue." *F.K. v. Iowa Dist. Court*, 630 N.W.2d 801, 808 (Iowa 2001).

■ The proceedings in this case are child-in-need-of-assistance/termination of parental rights, which directly impact the children's familial associations. A child's liberty interest in familial association is protected by the Due Process Clause and the State may only interfere with this liberty interest after providing the children due process of law. *F.K.*, 630 N.W.2d at 808; *see also Santosky v. Kramer*, 455 U.S. 745, 760, 102 S.Ct. 1388, 1398, 71 L.Ed.2d 599, 611 (1982) ("[T]he child and his parents share a vital interest in preventing erroneous termination of their natural relationship."). We find that the children have a protected liberty interest in the present case.

■ Next, we must determine what process is due this particular liberty interest. *F.K.*, 630 N.W.2d at 808. The requirements of due process are flexible and in order to determine what process is due, we balance three factors: (1) the private interest implicated; (2) the risk of an erroneous deprivation of this interest by the current procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest in the regulation, including the burdens imposed by additional or different procedures. *F.K.*, 630 N.W.2d at 808; *Callender*, 591 N.W.2d at 189. The minimum requirements of due process are

notice and "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976); *F.K.*, 630 N.W.2d at 808; *In re Estate of Adams*, 599 N.W.2d 707, 710 (Iowa 1999). "Due process not only requires a hearing, but a 'hearing appropriate to the nature of the case.'" *In re Guardianship of B.J.P.*, 613 N.W.2d 670, 673 (Iowa 2000).

■ The children are parties to the transfer proceedings and have a vital interest in the proceedings. *See Santosky*, 455 U.S. at 754 n. 7, 102 S.Ct. at 1395 n. 7, 71 L.Ed.2d at 606–07 at n. 7 (discussing that a child has important liberty interests in parental rights proceedings and a child and parent's interests may differ). However, as discussed above, section 232B.5(10) only allows for parents to object to transfer proceedings and prevents the children from objecting to and participating in the transfer proceedings. Thus, the children were denied an opportunity to be heard. *See M.C.*, 504 N.W.2d at 601–02 (finding that where an Indian child was denied an evidentiary hearing to object to a transfer of jurisdiction to a tribe, the Indian child was not "provided with adequate notice or an opportunity to be heard"). The children are entitled to a voice at every stage of the proceedings. "While providing additional rights to the tribe is the prerogative of the State, those rights may not come at the expense of the parent's or child's rights." *N.N.E.*, 752 N.W.2d at 9. The statute, by not including the children as parties able to make an objection, violates their procedural due process rights. Therefore, we find Iowa Code section 232B.5(10) unconstitutional on procedural due process grounds.

**2. The Children's Constitutional Claims Regarding the Substance of their Objection.** The children argue that

they should be allowed to object to a transfer of jurisdiction based upon their best interests. Our supreme court has discussed that under the Iowa ICWA, parties are not allowed to object to a transfer motion based upon the best interests of the children. *N.V.*, 744 N.W.2d at 638.[6] This rule stems from two sources within the Iowa ICWA. *Id.* First, section 232B.5(13) narrowly defines good cause to deny a transfer and does not contain a best-interests-of-the-children exception. *Id.* Second, a child's best interests are defined differently for a non-Indian child and an Indian child. *Id.* A non-Indian child's best interests are defined under Iowa Code chapter 232, whereas an Indian child's best interests are defined under the Iowa ICWA as:

> [The] use of practices in accordance with the federal Indian Child Welfare Act, this chapter, and other applicable law, that are designed to prevent the Indian child's voluntary or involuntary out-of-home placement, and whenever such placement is necessary or ordered, placing the child, to the greatest extent possible, in a foster home, adoptive placement, or other type of custodial placement that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with

the Indian child's tribe and tribal community.

Iowa Code § 232B.3(2).

The children attempted to object to the transfer of jurisdiction claiming that a transfer of jurisdiction was not in their best interests for various reasons. For example, S.G. and L.R. either complained of or exhibited signs of sexual abuse by their grandfather, whose home they were to be placed in upon transfer of jurisdiction to the tribal court, and the children asserted that they were bonded with one another and the placements advanced by the Tribe would separate the siblings.[7] *See In re T.I.*, 707 N.W.2d 826, 833 (S.D. 2005) (finding that good cause existed to deny transfer to tribal court where the state court was the only court with jurisdiction of all the siblings). However, the children were not allowed to object and were therefore unable to introduce such evidence. As a result, they assert that their rights to substantive due process were violated when they were prevented from objecting to the transfer based upon their best interests.[8]

A substantive due process inquiry involves two steps. *Seering*, 701 N.W.2d at 662.

The first requires a determination of "the nature of the individual right involved." If a fundamental right is implicated, we apply strict scrutiny analysis,

---

**6.** In *N.V.*, there was no constitutional challenge raised to whether parties could challenge a motion to transfer based upon a child's best interests. *N.V.*, 744 N.W.2d at 638.

**7.** J.L. has been placed with a paternal aunt of S.G. The children do not contest J.L.'s placement other than the fact that the siblings have an interest in being placed together.

**8.** The children also raise an equal protection claim based upon the two classes of children created under the Iowa ICWA—Indian chil-

dren and non-Indian children. *See A.W.*, 741 N.W.2d at 807 (acknowledging that the Iowa ICWA creates two classes of children). However, having found that Iowa Code section 232B.5 is unconstitutional on due process grounds as applied to the children, we do not need to address the equal protection claim raised by the children. *See id.* at 813 (determining that because the court found the challenged code section unconstitutional on equal protection grounds, it was unnecessary to reach other claims raised).

which requires a determination of "whether the government action infringing the fundamental right is narrowly tailored to serve a compelling government interest." If a fundamental right is not implicated, a statute need only survive a rational basis analysis, which requires us to consider whether there is "a reasonable fit between the government interest and the means utilized to advance that interest."

*Id.*

 "[O]nly fundamental rights and liberties [that] are deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty qualify for such protection." *Id.* at 664 (citations and quotations omitted); *see Albright v. Oliver,* 510 U.S. 266, 271–72, 114 S.Ct. 807, 812, 127 L.Ed.2d 114, 122 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."). In the present case, the proceedings concern the children's interest in familial association, which has been recognized as a fundamental liberty interest protected by the Due Process Clause. *F.K.,* 630 N.W.2d at 808. Additionally, in this particular hearing, the children attempted to raise best interests arguments based upon their physical safety, as well as familial association, among other arguments. *See Youngberg v. Romeo,* 457 U.S. 307, 315, 102 S.Ct. 2452, 2457, 73 L.Ed.2d 28, 37

(1982) (discussing that a right to personal safety constitutes a historic liberty interest protected substantively by the Due Process Clause). We find that a fundamental interest is implicated in the present case.

Next, we must determine whether the statute is "narrowly tailored to serve a compelling state interest." *N.N.E.,* 752 N.W.2d at 9. Our supreme court has stated:

> The Supreme Court explained why the federal ICWA was enacted: "Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians."

*Id.* "Assuming survival of the tribe is a compelling state interest," we must determine whether the Iowa ICWA definition of good cause is narrowly tailored. *See id.* We find that it is not. Iowa Code section 232B.5 completely prohibits the children subject to the proceeding from asserting their rights. In this case, it prohibited the children from raising an argument based upon their best interests, such as their preference to remain with siblings or their physical or psychological safety. Furthermore, in any case the court cannot consider the children's particularized circumstances. Because the narrow good cause definition prevents the children from asserting any argument, the statute places the rights of the tribe above the rights of an Indian child.[9] Therefore, we find that

9. As cited above, some states have examined the Federal ICWA and determined that the best interests of a child were not to be considered in determining whether to transfer jurisdiction to tribal court. *See, e.g., J.L.P.,* 870 P.2d at 1258. However, these cases are not applicable to the Iowa ICWA. Under the Federal ICWA, a child may object based upon the child's particular circumstances. *See* Guidelines, 44 Fed. Reg. at 67,591; *see also C.W.,* 479 N.W.2d at 113 (discussing that under the

Federal ICWA good cause to the contrary includes, but is not limited to, "cases where (1) the proceeding is at an advanced stage when the petition to transfer is received, and the petition is not promptly filed after receipt of notice; (2) the Indian child is over the age of 12 and objects to the transfer; (3) evidence necessary to decide the case cannot be adequately presented to the tribal court without undue hardship to the witnesses and parties; and (4) the parents of an Indian child over the

the narrow definition of good cause prohibiting the children from objecting to the motion to transfer based upon their best interests and introducing evidence of their best interests violates their substantive due process rights.

Furthermore, the purpose of the Iowa ICWA is not undermined by any holding in this opinion. The stated purpose of the Iowa ICWA is "to clarify state policies and procedures regarding implementation of the [Federal ICWA] . . . [and] to ensure that the intent and provisions of the [Federal ICWA] are enforced." Iowa Code § 232B.2. The Federal ICWA was not designed to completely prohibit consideration of a child's circumstances or rights. In fact, many courts have noted that the Federal ICWA has a dual purpose—to protect the best interests of a child and to preserve the Indian culture. *See Maricopa County Juvenile Action No. A–25525*, 136 Ariz. 528, 667 P.2d 228, 234 (Ariz.Ct.App. 1983) ("[T]he congressional declaration of policy behind the ICWA emphasizes that the first interest Congress seeks to protect is that of Indian children. It is patently clear that Congress envisioned situations in which the child's best interest may override a tribal or family interest—the preferences for placement are to be followed absent good cause to the contrary.' "); *T.R.M.*, 525 N.E.2d at 308 ("The purpose of the ICWA, to protect the interests of the Indian family, is patently clear. However, a paramount interest is the protection of the best interests of the child.");

*C.W.*, 479 N.W.2d at 114 ("ICWA does not change the cardinal rule that the best interests of the child are paramount, although it may alter its focus."). The dual purpose of the Federal ICWA is reflected in the dual jurisdictional scheme, whereby jurisdiction is transferred to the tribal court absent good cause to the contrary. *See* 25 U.S.C. § 1911(b). Under the good cause analysis, a child is allowed to object to the transfer and participate in the proceedings. *See* Guidelines, 44 Fed. Reg. at 67,590. The court considers a child's particularized circumstances, such as their contact with the tribe or the child's preferences if over the age of thirteen. *See* Guidelines, 44 Fed. Reg. at 67,591. In no part does the Federal ICWA suggest children's rights should be eliminated in favor of a tribe's rights.

■ Moreover, in no part does the Iowa ICWA suggest children's rights should be eliminated in favor of a tribe's rights. The Iowa ICWA's definition of an Indian child's best interests focuses on maintaining the Indian culture. Iowa Code § 232B.3(2). However, nothing in Iowa Code chapter 232B places maintaining the Indian culture above a child's rights or safety. *See, e.g.*, Iowa Code §§ 232B.6 (providing that the chapter shall not be construed to prevent the emergency removal in order to prevent imminent physical damage or harm to the child); 232B.9(2) (providing that the placement of an Indian child shall be in a setting where

age of five are not available, and the child has had little or no contact with the child's tribe or members of the child's tribe"). In this case, S.G. asserts that she is over the age of five and has had little contact with the tribe and the motion to transfer came late in the proceedings, which would affect the therapy she is receiving. Both of these arguments would be considered under the Federal ICWA. *See* Guidelines, 44 Fed. Reg. at 67,591 (stating that good cause to not transfer jurisdiction to tribal court exists under certain circumstances, including that the "proceeding was at an advanced stage when the petition to transfer was received" and the "parents of a child over five years of age are not available and the child has little or no contact with the child's tribe or members of the child's tribe"). However, the Iowa ICWA creates a blanket rule that none of the child's circumstances can be considered.

the child's special needs are met); 232B.9(6) (stated the placement preference of an Indian child may be considered).

We find that Iowa Code section 232B.5(10) and (13) that prevents a child subject to the proceedings from objecting to a motion to transfer is unconstitutional. Additionally, we find that Iowa Code section 232B.5(13) defining good cause to deny a motion to transfer is unconstitutional. Therefore, we reverse and remand for a hearing on the transfer motion, during which the children shall be allowed to object and the children shall be allowed to introduce evidence of their best interests.

**REVERSED AND REMANDED.**