**IN THE COURT OF APPEALS OF IOWA**

No. 16-0829
Filed August 17, 2016

**IN THE INTEREST OF E.D., F.D., AND J.D.,**
**Minor Children,**

**R.G., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Julie A. Schumacher, District Associate Judge.

A mother appeals the termination of her parental rights to three children who are members of an Indian tribe. **AFFIRMED.**

Harold K. Widdison of Harold K. Widdison, P.C., Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Jessica R. Noll of Deck Law L.L.P., Sioux City, for minor children.

Ainsley Griffin Sr., Macy, Nebraska, for the Omaha Tribe of Nebraska.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

This termination-of-parental-rights appeal involves three children—ages eight, four, and one—who are members of the Omaha Tribe of Nebraska.[1] Their mother, who lived on the reservation at the time of the hearing, seeks reversal of the juvenile court's termination order. The mother's petition on appeal lacks clarity as to the legal issues presented and the juvenile court findings with which she disagrees. She mentions the sufficiency of the evidence supporting the grounds for termination, but she does not pinpoint the elements the State fell short of proving. Instead she alleges the State failed to show the Iowa Department of Human Services (DHS) made reasonable efforts to reunify the family. She also claims the juvenile court erred in denying the tribe's motion to transfer.[2] Finally, she asserts the State failed to "comply with the spirit and the letter" of the Indian Child Welfare Act—without specifying the ICWA provisions allegedly breached.

Assuming the mother's petition adequately raises a sufficiency issue, we conclude the juvenile court properly terminated her parental rights under Iowa Code section 232.116(1)(d) (2015). We also agree with the juvenile court's conclusion that the State engaged in "reasonable efforts" under Iowa Code section 232.102(7), as well as "active efforts" to "provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family" under section 232B.5(19). Given the unusual procedural history here, we find no error in the juvenile court's denial of the tribe's motion to transfer the case under

---

[1] A fourth child, Js.D., who tested positive for methamphetamine at birth in December 2013, was living with a relative and was not a subject of these termination proceedings.
[2] The tribe did not file any documents in this appeal.

section 232B.5. Finally, the mother's passing reference to non-compliance with ICWA is too vague to trigger a more extensive review under chapter 232B.

## I. Facts and Prior Proceedings

As described in the juvenile court's decision, this family has had "extensive history" with the DHS. Child Protection Service investigators returned no less than eight founded assessments between 2012 and 2015. In June 2012, the parents left F.D. (born in August 2011) and Jr.D. (born in April 2007) unsupervised to care for themselves. Following that incident, the family participated in voluntary services offered by the DHS. A similar incident of neglect occurred in June 2013. The father was arrested for assaulting the mother in October 2013; he told authorities the mother also struck him.

By January 2014, substance abuse by the parents prompted a child-in-need-of-assistance (CINA) hearing. The mother admitted she used methamphetamine during her pregnancy with Js.D. The juvenile court adjudicated Jr.D., F.D., and Js.D. as CINA under Iowa Code section 232.2(6)(b), (c)(2), (n), and (o). By the end of that month, the proceedings were transferred to the Omaha Tribe in Macy Nebraska.

The tribe removed the children from their parents' custody in July 2014 based on a child protective assessment showing the mother and father both used methamphetamine while caring for the children. The mother attended an in-patient substance abuse treatment program in Winnebago, Nebraska, during January 2015. The tribe returned the children to her one month after she completed treatment. The tribe dismissed the case in March 2015.

But renewed concerns about the mother's drug use emerged when she gave birth to E.D. a month later. In April 2015, the State filed a new CINA petition because the medical staff believed the baby was going through withdrawal. When the meconium test came back negative, the matter was dismissed.

The family returned to the attention of the DHS a few months later. On four occasions in the summer of 2015, the children were left unattended in the early morning hours. In one instance, the manager of the apartment complex where they lived saw four-year-old F.D. on top of a car. In another episode, a police officer found three of the children alone in the apartment without a telephone or knowledge of their parents' whereabouts.

In September 2015, the juvenile court adjudicated E.D., F.D., and Jr.D. as CINA under section 232.2(6)(b), (c)(2), and (n). The State asked the court to set a hearing to determine if aggravating circumstances existed to waive the requirement of reasonable efforts to reunify the family. The DHS initially placed the children with a relative, who less than three weeks later asked that they be removed from her care. After a shelter-care hearing on September 29, the juvenile court asked the tribe to "immediately identify to the Iowa DHS any potential relative placements" for three children. Because no family members were identified, the DHS placed the children in foster care. The parents did not exercise visitation with the children between August 2015 and November 2015.

On October 13, 2015, the Omaha Tribe filed a motion to transfer the CINA cases to tribal court. The parents supported the transfer motion. The guardian ad litem (GAL) resisted the motion, asserting it was not in the children's best

interest to have their cases handled by the tribal court. The GAL reasoned that transferring jurisdiction to the tribal court would delay permanency for the children. The State and the DHS took no position on the tribe's motion to transfer. At a hearing on the motion to transfer, the Family Safety Risk and Permanency (FSRP) worker testified she had provided parenting education, budgeting, and supervised visitation for the family since August 2015. After the hearing, the juvenile court decided on January 20, 2016, to retain jurisdiction of the CINA cases. The court noted the denial of the motion to transfer did not preclude the tribe from participating in the CINA proceedings. The court also determined the DHS had provided active efforts to prevent the breakup of the family, including staffing the case on a weekly basis with the DHS liaison for Native American issues.

On November 9, 2015, the court found the existence of aggravated circumstances under section 232.102(12)(b) and granted the State's motion to waive reasonable efforts and proceed to permanency. Less than one month later, the State filed its petition to terminate parental rights of both the father and mother as to E.D., F.D. and Jr.D. Before the termination hearing occurred, the father was arrested for assaulting the mother after they had both been drinking. During this same time period, the mother was evicted from her apartment in Sioux City for not paying rent and moved in with a relative living on the Omaha Tribe's reservation in Macy, Nebraska.

The juvenile court held a termination hearing on April 8, 2016. The DHS case manager Robin Garraway testified the mother had not been cooperative with services and could not provide the children with stability. The mother

testified that since August 2015, she had not completed a substance abuse evaluation, had not followed through with the parenting curriculum provided by the FSRP worker, and did not have any income. The court observed: "The mother was belligerent throughout the termination hearing, shouting things out during other witnesses' testimony, leaving the courtroom during the proceedings, refusing to sit at the counsel table, sleeping during the proceedings, staring at the ceiling, and refusing to answer questions on both direct and cross-examination."

The court issued its order terminating the parental rights of both the mother and the father on May 8, 2016. Despite earlier waiving the reasonable-efforts requirement, the court found the DHS efforts to reunify the family were "tantamount to 'a vigorous and concerted level of casework beyond the level that typically constitutes reasonable efforts.'" The mother appeals.

## II. Scope and Standards of Review

We review termination-of-parental-rights proceedings de novo. *In re J.L.*, 779 N.W.2d 481, 485 (Iowa Ct. App. 2009). But we review the juvenile court's denial of a motion to transfer jurisdiction under section 232B.5 for correction of legal error. *Id.*

This case involves Indian children, and the parties agree that Iowa ICWA provisions apply. The ICWA has a dual purpose—to protect the best interests of a child and preserve the Indian culture. *Id.* at 492. We strictly construe the ICWA provisions, though our "paramount interest" remains the protection of the children's best interests. *See In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011).

### III. Analysis of Mother's Issues

### A. Statutory Grounds for Termination

In its petition to terminate the mother's parental rights, the State relied on Iowa Code section 232.116(1)(b), (d), (i), and (*l*). The court's order terminated the mother's rights under subsections (d), (i), and (*l*).[3]

In her petition on appeal, the mother mentions the sufficiency of the evidence, but does not focus our attention on what is missing from the State's proof. The State contends the mother waived any argument related to the specific provisions of each code section. We agree the mother's petition is scanty on the basis for her sufficiency claim, but we nevertheless address the grounds for termination.

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground supported by clear and convincing evidence. *In re D.W.,* 791 N.W.2d 703, 707 (Iowa 2010). In this case, we find clear and convincing evidence to support the order under subsection (d), which requires proof of the following elements:

> (1) The court has previously adjudicated the child to be [CINA] after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be [CINA] after such a finding.
> (2) Subsequent to the [CINA] adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code § 232.116(1)(d).

---

[3] The court decided the State did not prove by clear and convincing evidence that the mother abandoned the children under section 232.116(1)(b).

The court adjudicated F.D. and Jr.D. as CINA in January 2014 based on a finding of parental neglect. The court adjudicated E.D., F.D., and Jr.D. as CINA in September 2015. The two adjudications may serve as the basis for termination of parental rights under section 232.116(1)(d). *See In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014). The record shows after the CINA adjudication, the mother was offered and received services to address her substance-abuse issues, her lack of parenting skills, and her abusive relationship with the father. The juvenile court opined: "It would be difficult to imagine a parent that has been more resistive to reunification services than the mother in this case." Our de novo review of the record reveals support for that opinion. We agree with the juvenile court's determination that despite the offer and receipt of services, the circumstances leading to the CINA adjudication still exist. Accordingly, we affirm termination of the mother's rights under subsection (d).[4]

## B. DHS Efforts to Reunify the Family

When the DHS removes children from their parent's care, the State is responsible for making "every reasonable effort" to return them home as quickly as possible consistent with their best interests. *See* Iowa Code § 232.102(7). "Reasonable efforts" are those actions that make it possible for the children to safely return to the family's home. *Id.* § 232.102(10)(a).

When the DHS removes Indian children from their parent's care, the State must offer clear and convincing evidence to the juvenile court that "active efforts have been made to provide remedial services and rehabilitative programs

---

[4] Although the juvenile court found aggravating circumstances warranting waiver of the obligation to make reasonable efforts towards reunification, the DHS provided a plethora of services before the waiver order was filed.

designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." Iowa Code § 232B.5(19); *D.S.,* 806 N.W.2d at 466. The active-efforts requirement set forth in section 232B.5(19) aims to preserve the parent-child relationship or the children's connection to Indian culture. *D.S.*, 806 N.W.2d at 466. The juvenile court shall not order termination, "unless the evidence of active efforts shows there has been a vigorous and concerted level of casework beyond the level that typically constitutes reasonable efforts . . . . Reasonable efforts shall not be construed to be active efforts." Iowa Code § 232B.5(19).[5]

The mother's petition on appeal primarily discusses the reasonable-efforts standard, but does include the following sentence: "There has NOT been a 'vigorous and concerted level of case work beyond the level typically constituting reasonable efforts.'" Although the mother's argument is minimal on the active-efforts requirement, we nevertheless examine whether the State met its burden to show a concerted level of casework to prevent the breakup of this Indian

---

[5] Iowa Code section 232B.5(19) states:
> Active efforts shall include but are not limited to all of the following:
>     a. A request to the Indian child's tribe to convene traditional and customary support and resolution actions or services.
>     b. Identification and participation of tribally designated representatives at the earliest point.
>     c. Consultation with extended family members to identify family structure and family support services that may be provided by extended family members.
>     d. Frequent visitation in the Indian child's home and the homes of the child's extended family members.
>     e. Exhaustion of all tribally appropriate family preservation alternatives.
>     f. Identification and provision of information to the child's family concerning community resources that may be able to offer housing, financial, and transportation assistance and actively assisting the family in accessing the community resources.

family.  Our examination confirms the DHS engaged in active efforts at reunification.

The DHS has offered this family numerous services dating back to 2012. After founded child abuse reports in June 2012 and June 2013, the DHS offered FSRP assistance through Boys Town, but the family largely refused those services.  In January 2014, the mother completed a substance abuse assessment at Jackson Recovery Center, which diagnosed her with amphetamine dependence and recommended residential treatment.  But she refused to enter the Women and Children's Center program that was offered. The mother did receive drug treatment from the Winnebago Tribe and parenting classes through the Ponca Tribe in January 2015.

The mother was offered assistance with applying for child care and housing in August 2015, but failed to attend.  In that same time period, the family was offered FSRP services, including supervised visitation, budgeting, and parenting skill training.  The parents initially refused to attend visitation and cooperated with the FSRP provider only sporadically.

On appeal, the mother focuses on her transportation difficulties.  She argues, while the State offered her bus passes, "those are no help because there is no bus services between Macy, Nebraska, where the Mother lives and Sioux City, Iowa where services are offered."  The mother moved to Macy late in the case, after she was evicted from her apartment in Sioux City for not paying rent.

DHS worker Garraway disputed the mother's position that transportation was the greatest barrier to reunification.  Garraway—who was assigned to the DHS Native American unit and had knowledge regarding the Omaha Tribe—

testified the Macy reservation offered tribal services to people in its community, but the mother had not chosen to participate.

In addition, the FSRP worker from Southwest Iowa Family Access Center testified at the termination hearing that during early 2016 she had provided round-trip transportation to the mother from Macy, Nebraska, to the children's foster home in Schaller, Iowa, and back—a five-hour round trip. Together with the two-hour visitation, the process took a total of seven hours. The worker testified the service was "above and beyond" the typical case. The worker also testified she provided the parents with resources to help them set up a household budget as well as a Love & Logic parenting curriculum, but the parents did not follow through with the projects.

We agree with the juvenile court's determination that the State satisfied both the reasonable-efforts requirement under section 232.102(7), as well as the more demanding ICWA active-efforts requirement.

### C. Motion to Transfer Jurisdiction to Tribe

The mother claims the juvenile court erred in failing to grant the tribe's motion to transfer jurisdiction because "the court determined that ICWA applied in this case" and because "both parents supported the Tribe's motion to transfer."

The State argues the mother did not preserve error on the issue of denial of the tribe's motion to transfer because (1) the mother did not present evidence in support of the transfer motion and (2) neither the mother nor the tribe appealed the January 20, 2016 order denying the motion to transfer.[6] In the alternative,

---

[6] The State's response to the petition on appeal cites cases concerning standing but does not outright argue the mother lacks standing to contest the denial of the tribe's

the State contends the juvenile court correctly found good cause to deny the tribe's transfer motion.

We start with the preservation question. The State suggests the mother waived her objection by not appealing the denial-of-transfer order. We disagree. The January 20 order did not dispose of all issues in the case. Accordingly, it was not a final appealable order. *See* Iowa R. App. P. 6.101(1)(a); *In re T.R.*, 705 N.W.2d 6, 10 (Iowa 2005); *see also Citizen Potawatomi Nation v. Dinwiddie Dep't of Soc. Servs.*, No. 1713-12-2, 2013 WL 4804901, at \*2 (Va. Ct. App. Sept. 10, 2013). The mother is entitled to raise the transfer issue on appeal from the final termination ruling. *See In re Y.V.*, No. 4199-672, 1999 WL 1255722, at \*2 (Iowa Ct. App. Dec. 27, 1999).

Having determined the issue is properly before us, we reject the mother's argument. The fact both parents supported a transfer of jurisdiction did not automatically require the juvenile court to grant the tribe's motion.

In *J.L.*, we declared the transfer provisions of Iowa's ICWA—sections 232B.5(10) and (13)—unconstitutional because they considered only the interests of the tribe and the parents. 779 N.W.2d at 492-93. We found the "narrow definition of good cause prohibiting the children from objecting to the motion to transfer based upon their best interests and introducing evidence of their best interests" violated the children's substantive due process rights. *Id.* at

---

motion to transfer. Because preservation of error and standing are separate concepts, we do not find the State's preservation argument incorporates an objection to the mother's standing to challenge the court's transfer ruling. *See Berent v. City of Iowa City*, 738 N.W.2d 193, 202-03 (Iowa 2007). But even if the State had properly contested the mother's standing, we would find she had a sufficient stake in the transfer of the CINA cases to the tribal court to obtain judicial review of the controversy. *See id.*

492 (concluding "nothing in [the Iowa ICWA] places maintaining the Indian culture above a child's rights or safety").  After our holding in *J.L.*, if the children object to the transfer of jurisdiction to the tribe, as was done by the GAL in this case, the court must determine whether good cause, including the children's best interests, exists to deny the petition to transfer.  *See* Iowa Code § 232B.5(10), (13); *In re E.D.* No. 12-1839, 2012 WL 6190548, at *2 (Iowa Ct. App. Dec. 12, 2012); *J.L.*, 779 N.W.2d at 492.

In denying the tribe's motion to transfer, the juvenile court cited *J.L.* and articulated the critical issue: "This court must consider whether, despite the Omaha Tribe's efforts to reunify the children with their parents, good cause exists to prevent transfer . . . including whether the transfer is in the best interests of the children."  After considering the progression of the CINA cases, the court concluded, "at this time, good cause exists to deny the Omaha Tribe's motion to transfer jurisdiction."  The court considered the "determining factor" to be the children's best interests, and listed the following circumstances: (1) a "complete lack of progress" on the part of the parents; (2) a founded child abuse assessment only six months after the tribe returned custody to the mother; and (3) "most importantly," the "safety of these three young children."  *See J.L.*, 779 N.W.2d at 492-93.  The juvenile court conducted a proper analysis under *J.L.* Given the particular struggles of this family and the new CINA adjudication after the tribe's earlier dismissal of the child welfare case, we find the juvenile court did not err in denying the tribe's motion to transfer.

### D. ICWA Compliance

At the conclusion of her petition on appeal, the mother asserts: "The State failed to comply with the spirit and letter of ICWA in this case." This broad assertion does not direct us to any particular deficiency in the State's handling of the placement of these Indian children. Iowa's ICWA, chapter 232B, encompasses fourteen sections with multiple subsections, spanning a dozen pages in the Iowa Code. Invocation of the entire chapter does not frame a viable assignment of error. Because we cannot play the role of advocate, we decline to address the mother's vague ICWA argument. *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume.").

**AFFIRMED.**